IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MEGAN BOHI, | ) |
| *Plaintiff,* | ) ) ) |
| vs. | ) Case No: ) |
| GARDNER EDGERTON HIGH SCHOOL DISTRICT 231 | ) ) ) ) **Jury Trial Demanded** |
| *Defendant.* | ) ) ) ) ) ) |

## COMPLAINT

Plaintiff Megan Bohi ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Garnder Edgerton High School District 231 ("District 231"), states and alleges as follows:

### Nature of Action

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights based on sex discrimination, including a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, U.S.C.A. § 2000e *et seq.* (Title VII).

### Parties

2. Plaintiff is an individual and a resident of Kansas.

3. At all times pertinent to this Complaint, Plaintiff was an employee within the meaning of the Title VII.

4. Defendant District 231 is a governmental entity.

5. At all times relevant hereto, Defendant District 231 is an employer governed by Title VII.

6. On information and belief, District 231 employs (and at all times relevant has employed) more than 200 employees.

## Jurisdiction and Venue

7. The claims alleged arise out of Plaintiff's employment with Defendant at 425 Waverly Road, Garnder, Kansas, 66030.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States.

9. This Court has general personal jurisdiction over Defendant District 231 because it is subject to service of process in the State of Kansas and has affiliations with the State of Kansas that are so continuous and systematic as to render it essentially at home in this State. This Court has specific personal jurisdiction over Defendant because the claim against it arises out of its acts in the State of Kansas that were purposefully directed at a resident of this State, including the commission of tortious acts.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in this judicial district.

## Administrative Procedures

11. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on **October 30, 2025**. A true and correct copy of her charge is attached as **Exhibit A** and is incorporated herein by reference.

12. The EEOC issued Plaintiff a Notice of Right to Sue for all charges on **February 1 2026.** A true and correct copy of those notices are attached as **Exhibit B** and are incorporated herein by reference.

13. This lawsuit has been timely filed with this Court, and Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations

14. Plaintiff began her employment at Gardner-Edgerton High School in August 2023.

15. She worked for several years before her constructive discharge on August 29, 2025, after she experienced retaliation for making complaints of sexual harassment at the hands of another teacher named Mike Arel.

16. In March 2025, while Plaintiff was on her way to a classroom, Mr. Arel stepped out of his own classroom and shoved Plaintiff into a wall while saying something like, "It's one of my favorite girls!"

17. Plaintiff was taken aback by this, not only because she had been shoved bodily into a wall, but because she had assumed Mr. Arel was not in his classroom.

18. Plaintiff typically took another, longer route to the classroom she was headed to in an attempt to avoid Mr. Arel specifically.

19. About two weeks later in March, 2025 as Plaintiff and another teacher, Hannah Robertson, were following students out of the classroom for lunch, Mr. Arel burst in and proclaimed "It's two of my favorite girls!" while forcing Plaintiff into a one-armed hug.

20. As if this sudden, nonconsensual touching was not enough, Mr. Arel proceeded to stare at Plaintiff's breasts and say, "I just love the Bohis!"

21. Plaintiff followed this incident with an emailed report to administration, specifically principal Frank Bell, where she also made them aware of the shoving incident earlier in the month.

22. This was not the first time Mr. Arel had sexual harassment complaints lodged against him.

23. Mr. Arel had recently been reported for sexual harassment by a teacher named Gretl Shelton, and administration had attempted to side wholly with Mr. Arel despite overwhelming evidence against him. The complaints however were substantiated against him.

24. In fact, the District asked Plaintiff to be a witness for Ms. Shelton's Title IX investigation but was never interviewed.

25. On April 1, 2025, Mr. Bell approached Plaintiff and her husband at a school function and asked her if she was doing alright, as well as what her husband thought about the "sexual harassment situation."

26. However, to Plaintiff's knowledge, the District had taken no steps to address the "the sexual harassment situation."

27. On April 2, 2025, deputy superintendent Jody Marshall told Plaintiff that he was going to speak with Mr. Arel and Mr. Bell.

28. Mr. Marshall told Plaintiff that there was a zero-tolerance policy for this kind of situation and that appropriate actions were going to be taken.

29. On April 11, 2025 Mr. Marshall followed up with Plaintiff, saying that he had confirmed with Ms. Robertson that the incident in her classroom had occurred and that he agreed that Mr. Arel's actions were inappropriate.

30. Mr. Marshall again assured Plaintiff that appropriate action would be taken. Mr. Marshall asked Plaintiff if Mr. Arel had stopped touching her at this point. Plaintiff confirmed that

while Mr. Arel had stopped touching her, he would stare daggers at her in an attempt to intimidate her any chance he got.

31. Mr. Marshall replied that that at least sounded like a step in the right direction, further displaying the administration's lack of concern for their teacher's well-being.

32. Mr. Arel continued his attempted intimidation tactics without repercussion from administration, and Plaintiff became increasingly uncomfortable at work.

33. The stress of the situation built exponentially, both due to Mr. Arel's misbehavior and administration's lack of response or concern.

34. Things finally came to a head around April 29, 2025, when Plaintiff emailed Mr. Marshall and formally requested a Title IX investigation in an attempt to get administration to deal with Mr. Arel.

35. Mr. Marshall told Plaintiff that this was Mr. Arel's first offense, blatantly lying to her, and that she likely didn't know what a Title IX complaint entailed and denied her the opportunity to pursue the complaint.

36. Mr. Marshall then said, "I do not know who you are talking to, but I would stop talking to them," alluding to teachers discussing the Title IX investigation that had recently concluded and had substantiated that Mr. Arel had sexually harassed Ms. Shelton several times.

37. This was another attempt by Mr. Marshall's to sweep Plaintiff's valid complaints under the rug and force her into silence, as he had done before both with her and Ms. Shelton.

38. Following these conversations, Mr. Marshall began acting coldly toward Plaintiff, displaying his displeasure at her attempts to speak up for herself.

39. Previously, Mr. Marshall had been friendly and approachable toward her, but began going out of his way to ensure that Plaintiff knew he was ignoring her.

40. Plaintiff held out for a few more months, but ultimately the failure of the administration to assist her in her time of vulnerability, the administrations efforts to dissuade her from reporting the sexual harassment, and the continued professional shunning reasonable led Plaintiff to belief that her work situation had become so intolerable that she had no choice but to submit her resignation to Defendant.

## Count I
### Sex Discrimination under Title VII

41. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

42. Plaintiff is female who was subjected to discrimination because of her sex.

43. Plaintiff was subjected to disparate treatment by Defendant, including but not limited to, creating a hostile work environment and constructively terminating Plaintiff based on her sex.

44. Defendant's discrimination against Plaintiff based on her sex was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

45. Plaintiff's sex was a motivating factor for Defendant's actions.

46. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint, finding that she has been subjected to unlawful sex discrimination in violation of Title VII, for an award of compensatory damages, and for her reasonable attorneys' fees, costs,

pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Count II
### Retaliation under Title VII

47. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

48. Plaintiff opposed and reported unlawful discrimination in the workplace by opposing sex discrimination and participating in protected activity, i.e. an investigation into sex discrimination.

49. Plaintiff's participation in the investigation, opposition to and reports of discrimination in the workplace constituted protected activities.

50. By reason of Plaintiff's participation, opposition and reports, Defendant retaliated against Plaintiff by, including but not limited to, refusing to undertake a Title IX investigation, dissuading Plaintiff from requesting a Title IX investigation, and subjecting her to a hostile work environment.

51. Plaintiff's participation in the investigation, opposition to and reports of discrimination were causally connected and a motivating factor for Defendant's actions.

52. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against Defendant for Count II and for actual and special damages including emotional distress, back pay and benefits with interest, reinstatement or front pay and benefits, attorneys' fees and costs incurred, and for such other and further relief as the Court deems just and necessary.

## **Demand for a Jury Trial**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

## **Designated Place of Trial**

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully Submitted,

**BROWN, CURRY & DUGGAN, LLC**

Sarah J. Duggan
Kansas Federal Bar Number #79092
Jonathan K. McCoy KS # 18537
1600 Genessee STE 956
Kansas City, Missouri 64101
Ph: 816-756-5458
Attorneys for Plaintiff
sduggan@brownandcurry.com
jon@brownandcurry.com